## STATE OF NORTH DAKOTA v. JOSEPH SCHUMACHER.

(132 N. W. 143.)

**Intoxicating Liquors — Nuisance — Evidence.**

1. Evidence examined, and *held* sufficient to sustain conviction for maintaining a common nuisance.

**Criminal Law — Witnesses — Attorney and Client — Confession to State's Attorney.**

2. Admissions of guilt made by the defendant to the assistant state's attorney, to procure discontinuance of prosecution, are admissible under the evidence in this case, and are not privileged as communications between attorney and client.

Opinion filed June 1, 1911.

Appeal from Ward County Court; *N. Davis,* Judge.

Josesph Schumacher was convicted of maintaining a liquor nuisance, and he appeals.

Affirmed.

*Palda, Aaker, & Green,* for appellant.

Defendant's admissions are inadmissible until the offense is proven by other evidence.

*Andrew Miller,* Attorney General, *Alfred Zuger* and *C. L. Young,* Assistant Attorneys General, and *Dudley L. Nash,* State's Attorney, for respondents.

Only a slight corroboration of a confession is necessary to convict.

Note.—The admissibility in evidence of a confession made to the prosecuting attorney is considered in an elaborate note in 18 L.R.A.(N.S.) 768, on the subject, "When confession is voluntary," in which all the other authorities are reviewed.

People v. Jones, 123 Cal. 65, 55 Pac. 698; People v. Thrall, 50 Cal. 415; People v. Simonsen, 107 Cal. 345, 40 Pac. 440; People v. Badgley, 16 Wend. 59; State v. Patterson, 73 Mo. 695; Gantling v. State, 41 Fla. 587, 26 So. 737; People v. Hennessey, 15 Wend. 147; Bergen v. People, 17 Ill. 426, 65 Am. Dec. 672; State v. Winney, 21 N. D. 72, 128 N. W. 680; Com. v. Kelley, 152 Mass. 486, 25 N. E. 835; 2 Woollen & T. Intoxicating Liquors, 926.

Goss, J. Defendant, Joseph Schumacher, was convicted of maintaining a common nuisance by the keeping of a building in Kenaston, Ward county, in which intoxicating liquors were kept for sale and sold as a beverage. He appeals on two assignments of error. They are: 1st. That there is no evidence in the record to justify the verdict, because there is no evidence establishing the facts charged in the information outside of the alleged admissions of the defendant; and 2d, the court erred in the reception of certain testimony over defendant's objection. Without passing upon the question of whether the defendant could not be convicted of said crime upon admissions alone, without independent, corroborating testimony of acts tending to show the commission of the crime charged, it is apparent that the record is replete with evidence as to the *corpus delicti* and defendant's connection therewith, aside from such admissions; and that the evidence, with the admissions as corroborated, justified the verdict rendered. The uncontraverted evidence is that defendant ran a livery business and had in his employ one Hurd. This employee, at two different occasions mentioned in his testimony, sold beer at the barn in question, at which place intoxicated persons were seen. Defendant himself was quite a beer drinker. The state also established by the testimony of the railroad agent in charge of the depot and incoming freight shipments at Kenaston, that defendant had received in his own name, during the time charged in the information, several shipments of goods in casks and barrels bearing the label of the Heilman Brewing Company, billed to defendant as "beer, malt or malted liquors," for which defendant paid the C. O. D. charges, receipting in his own name and taking away the goods; and that the location of the livery barn in question was but a block from the depot where such deliveries were made.

These facts were supplemented by the following testimony of the

assistant state's attorney, to whom defendant admitted his guilt. "Mr. Schumacher told me that the farmers wanted to keep a little beer, and that he kept a little beer; that he gave away quite a good deal of it and sold some very cheap. I questioned him as to how much beer he usually got in a week, and he said he got about a barrel a week, and I asked him how much he received a bottle for the beer, and he told me he sold it for 25 cents part of the time, and part of the time he gave it away to farmers who came into his place of business; that he did not aim to make anything out of the beer he was handling, but was simply aiming to get enough to pay for the beer itself so he wouldn't lose anything. I said to him: 'Of course, you didn't expect to lose anything on the beer?' and he said, 'No, you know I couldn't give it away entirely. I had to have enough to reimburse me for the beer that I was handing out.' That was his language as nearly as I can repeat it. He made it plain to us that he was giving away quite a good deal of beer and sold just enough to reimburse him. The price when he sold it was 25 cents a bottle, and he really did not think he ought to be prosecuted under the circumstances, and he came to us to have us not persist in the prosecution. Schumacher told me when I asked him point blank what he got for the beer he sold. He told me he charged 25 cents a bottle; and I went on to have him explain to me how he figured to break even, and he went on and explained to me that that price he charged to some of the customers, and to others he gave away; aimed to just about break even on the cases of beer; that he did not aim to make any profit. I made him no promise of immunity."

The witness further testified that this conversation occurred during the week prior and after the opening of the term of court at which trial was had, and after information was filed in the case. None of the evidence was denied or explained, the defendant not taking the stand; and the case was submitted to the jury on this uncontroverted testimony. Undoubtedly the evidence is sufficient to sustain the verdict. A prima facie case was made out without the testimony of the assistant state's attorney, and with his testimony as to the admissions of the defendant, no other verdict could probably have been returned than a verdict of guilty.

Defendant's second assignment of error relates to the reception in evidence of the testimony of the assistant state's attorney, the ground

of objection being that the communication testified to was privileged as a communication between attorney and client.

Such objection is not well taken. The facts conclusively disprove such relationship. The defendant, so far as the record discloses, appeared at the office of the state's attorney and sought to have the prosecution against him abandoned, and apparently, in giving his reasons why the state should dismiss the action, confessed his guilt. That the state's attorney could not be induced to drop prosecution, because the defendant voluntarily appeared and confessed the crime as a supposed inducement to procure such dismissal, offers no ground upon which to assume any relationship of attorney and client upon which to base the objection urged. There is no merit in the objection urged.

The judgment of the lower court is accordingly affirmed.